UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LUIS PENA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:18-cv-03857-JMS-DML |
| | ) |
| INDIANAPOLIS PUBLIC SCHOOL | ) |
| CORPORATION, E.R., a minor, b/n/f | ) |
| JORGE RAMOS, and JORGE RAMOS, | ) |
| Defendants. | ) |

# **ORDER**

On December 7, 2018, Plaintiff Luis Pena filed a Complaint against Indianapolis Public School Corporation ("IPS"), E.R. (a minor), and Jorge Ramos (E.R.'s father), relating to allegations E.R. and Mr. Ramos made that resulted in IPS investigating Mr. Pena's conduct and ultimately recommending termination of his employment with IPS. [Filing No. 1.] Presently pending before the Court are Mr. Pena's Applications to Enter a Default Judgment against Jorge Ramos and E.R. [Filing No. 25; Filing No. 29.] As explained below, the Court finds that Mr. Pena has not complied with the two-step process for entering default judgments, and therefore, the Court **DENIES** Mr. Pena's Applications to Enter Default Judgment against Mr. Ramos and E.R.

Also pending before the Court is a Motion to Dismiss filed by Mr. Ramos on his own behalf and on behalf of his daughter, E.R. [Filing No. 35.] Mr. Ramos and E.R. seek dismissal of Mr. Pena's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The Court finds that Mr. Pena's claims against Mr. Ramos and E.R. fall within the Court's supplemental jurisdiction. Accordingly, the Court **DENIES** Mr. Ramos's and E.R.'s Motion to Dismiss.

# I.
## APPLICATIONS TO ENTER DEFAULT JUDGMENT

### A. Background

On February 27, 2019, Mr. Pena filed an Application to Enter Default Judgment Against Defendant E.R., A Minor, b/n/f Jorge Ramos, [Filing No. 18], and an Application to Enter Default Judgment Against Defendant Jorge Ramos, [Filing No. 19]. On April 2, 2019, the Court denied without prejudice these Applications, stating that "[d]efault is a 'two step process' that is 'clearly outlined' in Rule 55(a) and 55(b) of the Federal Rules of Civil Procedure," and noting that Mr. Pena had not completed the first step by seeking the entry of default against Mr. Ramos and E.R. under Rule 55(a). [Filing No. 22 at 2-3; *see* Fed. R. Civ. P. 55(a)-(b).] The Court also noted that "Rule 55(b)(2) provides that '[a] default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.' Accordingly, any subsequent efforts for the Court to enter a default or default judgment against E.R. must take into account the foregoing." [Filing No. 22 at 2.]

On April 10, 2019 and May 3, 2019, Mr. Pena filed a second round of Applications to Enter a Default Judgment against Mr. Ramos and E.R, which are ripe for the Court's decision. [Filing No. 25; Filing No. 29].

### B. Legal Standard

Default is a "two-step process" that is "clearly outlined" in Rule 55(a) and 55(b) of the Federal Rules of Civil Procedure, with subpart (a) outlining the entry of default and subpart (b) outlining the entry of default judgment. *VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016); *see also* 10A Charles Alan Wright, Arthur R. Miller, et al., Federal Practice and Procedure: Civil 2d § 2682 (2018) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as

provided by Rule 55(a)."). The distinction between the two is that the first step, the entry of default, "does not of itself determine rights." *Id.* at 255 (quoting *United States v. Borchardt, 470 F.2d 257, 260 (7th Cir. 1972)*). "That role is reserved for a default judgment." *Id.* at 255.

### C. Discussion

In the second round of Applications to Enter Default Judgment, Mr. Pena is again seeking the entry of default judgment, not Clerk's entries of default. [*See* Filing No. 25; *see also* Filing No. 29.] In the Application to Enter Default Judgment Against Mr. Ramos, Mr. Pena states that as of April 10, 2019, no attorney had entered an appearance on Mr. Ramos's behalf, nor had a responsive pleading been filed for Mr. Ramos. [Filing No. 25 at 1.] In the Application to Enter Default Judgment Against E.R., Mr. Pena states that the Court denied his first Application because E.R. "was not represented by counsel. [E.R.] is now represented by counsel, (Dkt. 28), and therefore Plaintiff renews his Application for Default." [Filing No. 29 at 1-2.]

In his renewed Applications to Enter Default Judgment against Mr. Ramos and E.R., Mr. Pena again misses the mark. Mr. Pena still attempts to complete the "two-step process" of default in a single step via his pending motions. As noted in the Court's previous Order, [Filing No. 22], Mr. Pena must first seek a Clerk's entry of default pursuant to Rule 55(a) before he may file a motion for default judgment pursuant to Rule 55(b)(1). Although the Court outlined this two-step process in its previous Order, it appears that Mr. Pena ignored that guidance and incorrectly determined that the Court's denial of his original Applications to Enter Default Judgment were based on E.R.'s status as a minor. The Court denied without prejudice Mr. Pena's previous applications for default judgment because he failed to first seek a Clerk's entry of default. [*See* Filing No. 22 at 2.] Mr. Pena has made this same error in his second Applications to Enter Default Judgment, [Filing No. 25; Filing No. 29], and

3

accordingly, those applications are similarly **DENIED.**[1]

## II.
## MOTION TO DISMISS

### A. Background

The following facts are taken from Mr. Pena's Complaint, and the Court accepts them as true for purposes of the pending 12(b)(1) motion. *See* Fed. R. Civ. P. 12(b)(1). On December 7, 2018, Mr. Pena filed a Complaint against IPS, E.R., and Mr. Ramos. [Filing No. 1.] These allegations stem from events that took place while Mr. Pena was working as a bilingual and support staff member at IPS. [Filing No. 1 at 3.] In January 2018, Mr. Pena was working as an assistant in an 8th grade English class for IPS. [Filing No. 1 at 3.] E.R. was a student in this class and was part of a small group of students with whom Mr. Pena would regularly meet. [Filing No. 1 at 3.] During these small group meetings, E.R. would often be disruptive and Mr. Pena chastised E.R. several times before he decided to speak to the English teacher about E.R.'s behavior. [Filing No. 1 at 3.] On January 8, 2018, Mr. Pena attempted to contact E.R.'s father, Mr. Ramos, to advise him that another teacher in the school was also having issues with E.R.'s disruptive behavior. [Filing No. 1 at 3.] Mr. Pena was eventually able to reach E.R.'s uncle, who was listed as an emergency contact in E.R.'s IPS records. [Filing No. 1 at 4.] Mr. Pena advised the uncle that he needed to speak with Mr. Ramos about E.R.'s behavior at school and he requested that Mr. Ramos contact him. [Filing No. 1 at 4.] Mr. Ramos did not contact Mr. Pena, but instead went to E.R.'s school on February 6, 2018 and spoke to the assistant principal about Mr. Pena. [Filing No. 1 at 4.] Mr. Ramos reported that "Mr. Pena had disrespected E.R. by making her look for pictures of an old girlfriend including naked photos. He has made crude comments and gestures with his

---

[1] The Court notes that after Mr. Pena filed his second Applications to Enter Default Judgment, counsel for Mr. Ramos and E.R. entered her appearance and filed a responsive pleading—Mr. Ramos's and E.R.'s pending Motion to Dismiss, [Filing No. 35].

4

mouth." [Filing No. 1 at 4.] Mr. Pena denies the substance of these allegations made by Mr. Ramos. [Filing No. 2 at 4.]

IPS and Child Protective Services ("CPS") initiated investigations into Mr. Ramos's allegations about Mr. Pena. [Filing No. 1 at 4.] On February 7, 2018, Mr. Pena received notice from IPS that he was being suspended without pay pending the investigations and that he was "prohibited from visiting IPS school grounds without permission from [the principal], the IPS Police Department or [IPS's Director of Employee Relations]." [Filing No. 1 at 4.]

During CPS's investigation, E.R. made different allegations against Mr. Pena, all of which Mr. Pena contends are false and defamatory. [Filing No. 1 at 4.] CPS concluded its investigation and determined that it could not substantiate any of E.R.'s allegations. [Filing No. 1 at 4.]

From IPS's investigation, IPS determined that E.R.'s allegations were "substantiated." [Filing No. 1 at 5.] IPS's superintendent and general counsel recommended that IPS terminate Mr. Pena's employment. [Filing No. 1 at 5.] Mr. Pena was entitled to a hearing, which he requested, and which occurred on May 29, 2018. [Filing No. 1 at 5.] Mr. Pena submitted written statements from several students who indicated they had never witnessed Mr. Pena behaving in the manner that E.R. alleged. [Filing No. 1 at 5.] One of Mr. Pena's witnesses testified that E.R. and two boys instructed the witness to lie to investigators about Mr. Pena's and E.R.'s interactions so that Mr. Pena would be terminated. [Filing No. 1 at 5.] After the hearing, IPS decided to reset the hearing to another date and reopen its investigation to interview additional witnesses. [Filing No. 1 at 6.]

On November 16, 2018, IPS contacted Mr. Pena's counsel and advised him that Mr. Ramos reported to IPS that Mr. Pena was in the school parking lot trying to contact students who may be able to serve as witnesses. [Filing No. 1 at 6.] Mr. Pena denied that he was in the school parking

5

lot. [Filing No. 1 at 6.] IPS later confirmed that Mr. Pena had not been speaking to students on school property and stated to Mr. Pena's counsel that IPS was "not sure why Mr. Ramos was so adamant that this was the case and that it had been going on for some time." [Filing No. 1 at 6.] However, despite this, IPS issued Mr. Pena a second no trespass order. [Filing No. 1 at 6.] The reset hearing was conducted and IPS concluded that hearing by recommending termination of Mr. Pena's employment with IPS. [Filing No. 1 at 7.] On December 7, 2018, Mr. Pena filed this action. [Filing No. 1 at 7.] As of that date, Mr. Pena had not received notice of his termination. [Filing No. 1 at 7.]

In this action, Mr. Pena asserts claims against IPS for discrimination and violation of Title IX and claims against Mr. Ramos and E.R. for defamation per se, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED"). [Filing No. 1 at 8-10.] Mr. Pena also asserts a claim against Mr. Ramos individually for strict liability due to his status as a parent of E.R. [Filing No. 1 at 10.]

On May 28, 2019, Mr. Ramos, on behalf of himself and E.R., filed the pending Motion to Dismiss, seeking the dismissal of Mr. Pena's claims against them based on lack of subject matter jurisdiction. [Filing No. 35.]

### B. Legal Standard

"Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a claim for lack of subject matter jurisdiction." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When deciding a motion to dismiss under Rule 12(b)(1), the Court accepts the allegations in the plaintiff's complaint as true and draws all reasonable inferences in the plaintiff's favor. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). The burden is on the plaintiff to prove, by a preponderance of the evidence, that subject-matter

jurisdiction exists for his or her claims. *See Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

### C. Discussion

In their Motion to Dismiss, Mr. Ramos and E.R. argue that Mr. Pena's claims against them "sound only in state law tort" and do not "implicate federal statutes or federal questions," and therefore "this court has no subject matter jurisdiction over the claims." [Filing No. 35 at 1.] Mr. Ramos and E.R. argue that because they are not state actors and did not conspire with state actors to harm Mr. Pena, the Court does not have jurisdiction over "the claims against them [which] are solely state law claims." [Filing No. 36 at 3.]

Mr. Pena did not file a response to Mr. Ramos's and E.R.'s Motion to Dismiss.

Although Mr. Ramos and E.R. are correct in their statements that the claims against them are state law tort claims, they completely ignore a fundamental facet of subject matter jurisdiction—namely, supplemental jurisdiction. The Court agrees that the claims against them are not "federal questions" and therefore are not subject to this Court's jurisdiction under 28 U.S.C. § 1331, as asserted in Mr. Pena's Complaint. However, from the face of the Complaint, it appears that Mr. Pena intended to assert that the Court has supplemental jurisdiction over the state law claims via 28 U.S.C. § 1367(a). The Court will analyze whether the claims fall within its supplemental jurisdiction. *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 778 (7th Cir. 1994) ("[T]he court has an independent duty to satisfy itself that is has subject-matter jurisdiction.").

Section 1367 grants courts "supplemental jurisdiction over all claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "Two

7

claims are part of the same case or controversy if they derive from a common nucleus of operative facts. A loose factual connection between the claims is generally sufficient." *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007). This analysis generally first requires identifying the "nucleus of operative facts" underlying the original claim and then assessing whether the supplemental claim "ha[s] a basis in at least a portion of those facts." *McCoy v. Iberdola Renewables, Inc.*, 760 F.3d 674, 683-84 (7th Cir. 2014). In other words, the additional facts should "form[ ] a subset of the facts supporting" the original claim. *Id.* at 683. Persons against whom only state law claims are asserted may be joined as defendants in a case involving federal claims if: "(A) any right to relief is asserted against [the defendants] jointly, severally, or in the alterative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The Rule requires both elements to be met in order for joinder of the defendant to be proper. If the claims derive from a common nucleus of operative fact, "there is power in federal court to hear" the state law claims and the federal claims together. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

In this case, the "nucleus of operative facts" of Mr. Pena's federal claims against IPS concerns whether IPS discriminated against Mr. Pena and/or violated his due process rights. There are material connections between these federal claims against IPS and the claims against Mr. Ramos and E.R. for defamation, IIED, NIED, and strict liability. In his Complaint, Mr. Pena alleges that Mr. Ramos's statements to the assistant principal "immediately triggered a Title IX investigation by IPS as well as an investigation by [CPS] for alleged sexual misconduct." [Filing No. 2 at 4.] Mr. Pena was suspended without pay while IPS investigated Mr. Ramos's "allegations that [Mr. Pena] made inappropriate comments to a student and directed her to an explicit social

8

media post." [Filing No. 1 at 4.] During CPS's investigation, "E.R. made different allegations against Pena, all of which are alleged to be false and defamatory." [Filing No. 1 at 4.] Mr. Pena claims that IPS's investigation was "biased and inequitable from the outset." [Filing No. 1 at 8.] Mr. Pena also asserts that "[a]s a result of [E.R.'s] defamatory statements, [he] was suspended from his job at IPS without pay [and] was barred from setting foot on IPS property," and "[a]s a result of Jorge Ramos (sic) defamatory statements, IPS issued another no trespass order and sent police officers to [Mr.] Pena's home." [Filing No. 1 at 9.]

It is clear from this recitation of the facts that the subject matter of Mr. Pena's claims against Mr. Ramos and E.R.—i.e., the allegedly defamatory statements—was the catalyst for IPS's investigation, which ultimately led to his suspension, the no trespass order, the hearings, and the recommendations for Mr. Pena's termination. The statements made by Mr. Ramos and E.R. provide the factual basis for the federal claims Mr. Pena asserts against IPS. Questions of law or fact common to Mr. Ramos, E.R., and IPS will arise in this action. As such, Mr. Pena's claims asserted against Mr. Ramos and E.R. fall within this Court's supplemental jurisdiction. The Court therefore **DENIES** Mr. Ramos's and E.R.'s Motion to Dismiss Mr. Pena's claims against them for lack of jurisdiction.

### III.
### CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. Pena's Application to Enter a Default Judgment Against Defendant Jorge Ramos, [25], **DENIES** Mr. Pena's Application to Enter a Default Judgment Against Defendant E.R., a Minor, B/N/F Jorge Ramos, [29], and **DENIES** Mr. Ramos's and E.R.'s Motion to Dismiss for lack of subject matter jurisdiction, [35].

Date: 6/12/2019

_____
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**