| | | |
|---|---|---|
| LUIS PENA, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | No. 1:18-cv-03857-JMS-DML |
| | ) | |
| INDIANAPOLIS PUBLIC SCHOOL | ) | |
| CORPORATION, E.R., a minor, b/n/f, | ) | |
| JORGE RAMOS, and JORGE RAMOS, | ) | |
| | ) | |
| *Defendants*. | ) | |

## ORDER

On December 7, 2018, Plaintiff Luis Pena filed a Complaint against Indianapolis Public School Corporation ("IPS"), E.R. (a minor), and Jorge Ramos (E.R.'s father), relating to allegations E.R. and Mr. Ramos made that resulted in IPS investigating Mr. Pena's conduct and ultimately recommending termination of his employment with IPS. [Filing No. 1.] Presently pending before the Court is Defendant Indianapolis Public School Corporation's Motion to Dismiss Counts 1 and 2 ("Motion to Dismiss"), [Filing No. 16]. IPS seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Court finds that Mr. Pena's Title VII discrimination claim may proceed, but that his remaining claims must be dismissed at this stage. Accordingly, as explained below, the Court **GRANTS IN PART** and **DENIES IN PART** IPS's Motion to Dismiss.

### I.
### LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary, the statement need

only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

A motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The following are the factual allegations set forth in Mr. Pena's Complaint, which the Court must accept as true.

After filing an Equal Employment Opportunity Commission ("EEOC") Charge and receiving a Notice of Right to Sue from the EEOC, Mr. Pena filed a Complaint against IPS, E.R., and Mr. Ramos on December 7, 2018. [Filing No. 1 at 2.] The allegations stem from events that took place while Mr. Pena was working as a bilingual and support staff member at IPS. [Filing No. 1 at 3.] In January 2018, Mr. Pena was working as an assistant in an 8th grade English class for IPS. [Filing No. 1 at 3.] E.R. was a student in this class and was part of a small group of Spanish-speaking students with whom Mr. Pena would regularly meet. [Filing No. 1 at 3.] During

these small group meetings, E.R. would often be disruptive and Mr. Pena chastised E.R. several times before he decided to speak to the English teacher about E.R.'s behavior.  [Filing No. 1 at 3.] On January 8, 2018, Mr. Pena attempted to contact E.R.'s father, Mr. Ramos, to advise him that another teacher in the school was also having issues with E.R.'s disruptive behavior.  [Filing No. 1 at 3.]  Mr. Pena was eventually able to reach E.R.'s uncle, who was listed as an emergency contact in E.R.'s IPS records.  [Filing No. 1 at 4.]  Mr. Pena advised the uncle that he needed to speak with Mr. Ramos about E.R.'s behavior at school and requested that Mr. Ramos contact him. [Filing No. 1 at 4.]  Mr. Ramos did not contact Mr. Pena, but instead went to E.R.'s school on February 6, 2018 and spoke to the assistant principal about Mr. Pena.  [Filing No. 1 at 4.]  Mr. Ramos reported that "Mr. Pena had disrespected E.R. by making her look for pictures of an old girlfriend including naked photos.  He has made crude comments and gestures with his mouth." [Filing No. 1 at 4.]  Mr. Pena denied then, and still denies now, the substance of these allegations made by Mr. Ramos.  [Filing No. 1 at 4.]

IPS and Child Protective Services ("CPS") initiated investigations into Mr. Ramos's allegations about Mr. Pena.  [Filing No. 1 at 4.]  On February 7, 2018, Mr. Pena received notice from IPS that he was being suspended without pay pending the investigations of the "allegations that [he] made inappropriate comments to a student and directed her to an explicit social media post."  [Filing No. 1 at 4.]  The notice also stated that Mr. Pena was "prohibited from visiting IPS school grounds without permission from [the principal], the IPS Police Department or [IPS's Director of Employee Relations]."  [Filing No. 1 at 4.]

During CPS's investigation, E.R. made different allegations against Mr. Pena, all of which Mr. Pena contends are false and defamatory.  [Filing No. 1 at 4.]  CPS concluded its investigation and determined that it could not substantiate any of E.R.'s allegations.  [Filing No. 1 at 4.]

From IPS's investigation, however, IPS determined that Mr. Ramos's and E.R.'s allegations were "substantiated." [Filing No. 1 at 5.] IPS's superintendent and general counsel recommended that IPS terminate Mr. Pena's employment. [Filing No. 1 at 5.] IPS notified Mr. Pena that he was "suspended without pay pending his termination for violation of IPS's Title IX policy[,] including inappropriate and suggestive behavior and comments directed towards a female student." [Filing No. 1 at 5.] Mr. Pena received a hearing, which occurred on May 29, 2018. [Filing No. 1 at 5.] Mr. Pena submitted written statements from several students who indicated they had never witnessed Mr. Pena behaving in the manner that E.R. alleged. [Filing No. 1 at 5.] One of Mr. Pena's witnesses testified that E.R. and two boys instructed the witness to lie to investigators about Mr. Pena's and E.R.'s interactions so that Mr. Pena's employment would be terminated. [Filing No. 1 at 5.] IPS did not allow Mr. Pena to present the testimony of two witnesses who attended the hearing, nor did IPS allow Mr. Pena to cross-examine any of IPS's witnesses. [Filing No. 1 at 5.] After the hearing, IPS decided to reset the hearing to another date and reopen its investigation to interview additional witnesses. [Filing No. 1 at 6.]

On November 16, 2018, IPS contacted Mr. Pena's counsel and advised him that Mr. Ramos reported to IPS that Mr. Pena was in the school parking lot trying to contact students who may be able to serve as witnesses. [Filing No. 1 at 6.] Mr. Pena denied that he was in the school parking lot. [Filing No. 1 at 6.] IPS later confirmed that Mr. Pena had not been speaking to students on school property and stated to Mr. Pena's counsel that IPS was "not sure why Mr. Ramos was so adamant that this was the case and that it had been going on for some time." [Filing No. 1 at 6.] However, despite this finding, IPS issued Mr. Pena a second no trespass order. [Filing No. 1 at 6.] The second hearing was conducted on November 20, 2018. [Filing No. 1 at 6.] During cross-examination, IPS's official responsible for the follow-up investigation testified that she did not

speak to all of the witnesses that had submitted statements at the prior hearing.  [Filing No. 1 at 6.] The investigator stated that she was told by her IPS supervisor to not speak to those witnesses. [Filing No. 1 at 6.]  However, the investigator did speak to one of the boys who previously testified that E.R. told him to lie to investigators, and the boy stated he "hid in a bathroom instead of speaking with [the] IPS investigator because he was afraid."  [Filing No. 1 at 6.]  IPS did not speak to the teachers who routinely observe Mr. Pena's interactions with students "under the guise that the teachers do not speak Spanish so they would be unable to give accurate information."  [Filing No. 1 at 8.]  IPS failed to preserve any video evidence that may have been relevant.  [Filing No. 1 at 8.]  IPS concluded the second hearing by recommending the termination of Mr. Pena's employment with IPS.  [Filing No. 1 at 7.]

On December 7, 2018, Mr. Pena filed this action.  [Filing No. 1 at 7.]  As of that date, Mr. Pena had not received notice of his termination.  [Filing No. 1 at 7.]

Mr. Pena's Complaint alleges that:

- "IPS discriminated against [Mr.] Pena on the basis of his race and national origin (Columbian)";

- "[t]he discrimination subjected [Mr.] Pena to a hostile work environment that was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive working environment"; and,

- "[t]he Title IX investigation conducted by IPS was biased and inequitable from the outset," and "[t]hroughout the investigation of the allegations IPS discriminated against [Mr. Pena] on the basis of gender, and his race (Latino), considering him guilty until proven innocent, depriving him of fundamental due process, including the right to cross-examine his accuser as guaranteed by the United States and Indiana Constitutions."

[Filing No. 1 at 7-8.]

On February 22, 2019, IPS filed its Motion to Dismiss, [Filing No. 16], which is fully briefed and ripe for decision.

### III.
#### DISCUSSION

In its Motion to Dismiss, IPS argues that Mr. Pena's Complaint fails to state claims for violations of Title VII, Title IX, and the Due Process Clause of the Fourteenth Amendment. [Filing No. 16 at 1.] The Court addresses each claim in turn.

#### A. Title VII

Mr. Pena's Complaint alleges violations of Title VII under two distinct theories: (1) IPS discriminated against him based on his race and/or national origin; and, (2) IPS subjected him to a hostile work environment. IPS argues that both of these theories fail to state a claim and must be dismissed. The Court will address each Title VII claim separately.

*i.       Discrimination Based on Race or National Origin*

IPS argues that Mr. Pena has failed to allege a plausible claim for discrimination in violation of Title VII because he "does not plausibly allege that his race or national original played a role in his termination (or any other adverse employment action, for that matter) or that he was subjected to harassment on these bases." [Filing No. 16 at 5.] IPS argues that Mr. Pena "has pled himself out of court" because he admits in his Complaint that E.R.'s allegations were substantiated (meaning that IPS had a legitimate reason to recommend Mr. Pena's termination). [Filing No. 16 at 6.] IPS asserts that Mr. Pena's conclusory statements that he was discriminated against based on his race and national origin are speculative and insufficient to survive a motion to dismiss. [Filing No. 16 at 6.] IPS argues that Mr. Pena does not specifically state who engaged in the discrimination, when the discrimination took place, nor what actions occurred that were allegedly discriminatory. [Filing No. 16 at 1.] Moreover, argues IPS, Mr. Pena's allegations related to

discrimination against himself and others for being Spanish-speakers are irrelevant because "[l]anguage is not a protected class under Title VII, nor are language and national origin interchangeable." [Filing No. 16 at 7 (quoting *Vazquez v. Eli Lilly & Co.*, 2013 WL 5348542, at *6 (S.D. Ind. Sept. 24, 2013)).]

In response, Mr. Pena argues that he "need only initially create an inference that the employment decision was based on discrimination," and that he has sufficiently raised the inference that IPS "denied him the opportunity to present or discover any exculpatory witnesses/evidence solely because he and the students involved are from a race or national origin that speaks Spanish." [Filing No. 21 at 4-5.] Mr. Pena argues that to survive a motion to dismiss, he need only allege the type of discrimination he experienced, which he asserts he has done. [Filing No. 21 at 7.]

In reply, IPS reiterates its argument that Mr. Pena has failed to connect an adverse employment action to his race or national origin. [Filing No. 26 at 1.]

To state a claim for discrimination under Title VII, a plaintiff must only allege that his employer instituted an adverse employment action against him on the basis of his protected status. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027-28 (7th Cir. 2013). The Supreme Court has concluded, and the Seventh Circuit has repeatedly stressed, that employment discrimination claims "are not subject to a heightened pleading standard." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002)). A complaint "merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense," *Luevano*, 722 F.3d at 1028, and "[e]mployers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims," *Carlson*, 758 F.3d at 827.

In this action, Mr. Pena alleges that IPS's investigation and IPS's termination of his employment were based on his race and/or national origin. [*See generally* [Filing No. 1](link).] In his Complaint, Mr. Pena sets forth several allegations regarding IPS's alleged discrimination based on race and/or national origin, including:

- "IPS discriminated against [him] on the basis of his race and national origin (Columbian)" [[Filing No. 1 at 7](link)];

- He was "subjected to discrimination based on race (Hispanic) [and] national origin (Columbia)" [[Filing No. 1 at 1](link)];

- "The discrimination subjected [Mr.] Pena to a hostile work environment that was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive working environment" [[Filing No. 1 at 7](link)]; and,

- "Throughout the investigation of the allegations IPS discriminated against [him] on the basis of . . . his race (Latino)." [[Filing No. 1 at 8](link)].

It is true that Mr. Pena's Complaint is sparse in details that would connect the dots between his protected status and the adverse employment action that he identifies. However, in insisting that Mr. Pena provide such details, IPS asks the Court to apply the type of heightened pleading standard with which the Seventh Circuit has repeatedly taken issue. The pleading standard in Title VII "cases are different from the evidentiary burden a plaintiff must subsequently meet" on summary judgment, and the details IPS seeks are simply not required at the pleading stage. *Luevano*, 722 F.3d at 1028 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. 2008) (concluding that plaintiff sufficiently pled violation of Title VII where she alleged salary discrepancy and that "she had been subjected to adverse employment actions by Defendants on account of gender")). Mr. Pena put IPS on notice as to the nature of his claims, and he has alleged that his employer instituted an adverse employment action against him (termination) on the basis of his protected status (race and national origin). He has met the minimum required to state a claim

at the pleading stage. *See Freeman v. Metro. Water Reclamation Dist. of Greater Chi.*, 2019 WL 2481926, at *2 (7th Cir. June 14, 2019) (per curiam) ("We conclude that the district court erred by demanding too much specificity in [plaintiff's] complaint. A plaintiff alleging race discrimination need not allege each evidentiary element of a legal theory to survive a motion to dismiss."). Therefore, in relation to this aspect of Mr. Pena's Title VII discrimination claim, IPS's Motion to Dismiss is **DENIED**.

### ii. Hostile Work Environment

IPS argues that the Court should dismiss Mr. Pena's hostile work environment claim because he did not assert it in his EEOC Charge and, therefore, he has failed to exhaust his administrative remedies for this claim. [Filing No. 16 at 8.] IPS argues that Mr. Pena's EEOC Charge does not contain any allegations that could be construed as a hostile work environment claim. [Filing No. 16 at 9.]

In response, Mr. Pena argues that a plaintiff—especially one completing the EEOC Charge without the assistance of an attorney—need not set forth every fact that is the basis of the plaintiff's complaint. [Filing No. 21 at 8.] Instead, an allegation made in a complaint can fit within the allegations made in an EEOC Charge if the "discrimination is like or reasonably related to the allegations of the charge and growing out of such allegations." [Filing No. 21 at 8 (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976)).] Mr. Pena argues the allegations in the EEOC Charge and the allegations in the Complaint are reasonably related because the two sets of allegations describe the same conduct and implicate the same individuals. [Filing No. 21 at 8.]

IPS, on the other hand, argues that the EEOC Charge does not describe the same conduct that is outlined in the Complaint. [Filing No. 26 at 4.] IPS notes that Mr. Pena does not use the

words "harassment" or "hostile work environment" in the EEOC Charge, nor does he describe any conduct that could be considered "severe or pervasive." [Filing No. 26 at 4-5.] Therefore, argues IPS, Mr. Pena cannot bring his hostile work environment claim in this Court because he has not exhausted his administrative remedies at the agency level. [Filing No. 26 at 4.]

"Generally a plaintiff may not bring claims under Title VII that were not originally brought among the charges made to the EEOC." *Harper v. Godfrey Co.*, 45 F.3d 143, 147-48 (7th Cir. 1995). However, claims raised in a complaint may be permitted if they are "'like or reasonably related' to the EEOC charges and [they] reasonably can be expected to grow out of an EEOC investigation of the charges." *Id.* at 148 (citing *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)). Claims are considered reasonably related when there is "a factual relationship between them." *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001). The Seventh Circuit has stated that, at a minimum, the EEOC charge and civil complaint must "describe the same conduct and implicate the same individuals." *Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 813 (7th Cir. 2014) (internal quotation and emphasis omitted).

By way of review, Mr. Pena's EEOC Charge was completed as follows:

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | | | | | | DATE(S) DISCRIMINATION TOOK PLACE | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | Earliest | Latest |
| X RACE | X COLOR | X SEX | X RELIGION | X NATIONAL ORIGIN | | 02-07-2018 | 08-30-2018 |
| X RETALIATION | X AGE | DISABILITY | GENETIC INFORMATION | | | | |
| OTHER *(Specify)* | | | | | | X CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*
I have been employed as an ESL Bilingual Assistant for 14 years with Indianapolis Public Schools, most recently at George Washington Community High School.

I was informed on February 7th by Ken Pack, HR Representative, that I was suspended without pay pending investigation of a student allegation. I was notified of intent of termination on April 5th. DCS conducted an investigation and made a determination of unsubstantiated. Other witness reports also verify that the allegations were false. IPS would not take statements of witnesses into consideration, stating that they do not speak or understand Spanish. I have not been allowed to return to employment since February.

I believe I have been discriminated and retaliated against on the basis of my national origin (Hispanic), sex (male), race, age, color, and religion, in violation of Title VII of the Civil Rights Act of 1964, as amended; and the Age Discrimination in Employment Act of 1967, as amended.

[Filing No. 15-1 at 2.][1]  Mr. Pena's Complaint, however, alleged that:

- "he was subjected to discrimination based on race (Hispanic) [and] national origin (Columbia), and a hostile work environment" [Filing No. 1 at 1];

- "[t]he discrimination subjected [him] to a hostile work environment that was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive working environment" [Filing No. 1 at 7]; and,

- "[t]he harassment was sufficiently severe or pervasive that it altered the conditions of [his] employment, and created an intimidating, hostile, offensive, and abusive working environment" [Filing No. 1 at 7].

In *Huri v. Office of the Chief J. of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 831 (7th Cir. 2015), the Seventh Circuit held that a plaintiff need not use the words "hostile work environment" to raise a hostile work environment claim.  The Seventh Circuit Court in *Huri* reversed the district court's dismissal of the plaintiff's hostile work environment claim, noting, "Given Huri's inclusion of nationality- and religion-based harassment in the her [sic] first EEOC charge, her employers had no reason to be surprised by her Title VII hostile work environment allegations covering her time as a child care attendant."  *Id.*  The plaintiff in *Huri* had alleged in her EEOC Charge that she suffered continued "harassment," despite the internal complaints she made.  *Id.* Here, in contrast, Mr. Pena's EEOC Charge makes no reference to "harassment" or any conduct that would give rise to a hostile work environment as opposed to a claim related to the specific instances of discrimination alleged by Mr. Pena.  *See Stone v. Corr. Med. Servs., Inc.*, 2009 WL 4639617, at *7 (S.D. Ind. Dec. 1, 2009) (dismissing a hostile work environment claim where the plaintiff

---

[1] Although Mr. Pena did not attach the EEOC Charge to his Complaint, the Court can consider the EEOC Charge at the Rule 12(b)(6) stage without the Motion to Dismiss being turned into a motion for summary judgment.  *See Nolan v. City of Chi.*, 2017 WL 569154, at *4 n.1 (N.D. Ill. Feb. 13, 2017) (citing *Venture Assoc. Corp. v. Zenith Data Sys. Corp.* 987 F.2d 429, 431 (7th Cir. 1993)).

"makes no mention of having been subjected to a hostile work environment, no mention of any harassing activity by anyone at [her place of employment], and no allegations of sexual harassment or hostility.").  As a result, IPS had no reason to examine at the agency stage whether Mr. Pena had endured impermissible harassment or other hostile conduct.  Thus, Mr. Pena has failed to exhaust his hostile work environment claim.  Accordingly, the Court **GRANTS** IPS's Motion to Dismiss Mr. Pena's hostile work environment claim.

### B.  Violation of Title IX

IPS argues that Mr. Pena's Title IX claim fails as a matter of law because he does not allege particular circumstances suggesting that gender bias motivated IPS to recommend termination of Mr. Pena's employment.  [Filing No. 16 at 10.]  IPS argues that although Mr. Pena asserts that there were several procedural issues with the investigation and hearings that cast some doubt on the accuracy of the outcome of the disciplinary process, Mr. Pena's Complaint contains no allegations that suggest those alleged procedural deficiencies were connected to gender bias. [Filing No. 16 at 10-11.]

In his response, Mr. Pena argues that he has alleged sufficient facts to create an inference of gender bias in IPS's handling of the disciplinary process.  [Filing No. 21 at 15-16.]  Mr. Pena asserts that the facts pled in the Complaint lead "to a plausible suggestion that IPS acted with bias in their investigation" because the facts he has put forth "suggest[] that IPS was receiving pressure from E.R.'s father regarding the investigation and determination of his student's claims."  [Filing No. 21 at 10.]  Mr. Pena argues that because this pressure "stemm[ed] from the allegations of a female student against a male teacher," it "creates a background that when viewed in conjunction with other evidence of bias gives rise to a plausible claim [of gender discrimination]."  [Filing No. 21 at 10.]  Mr. Pena argues that "one plausible explanation" for IPS's decision is gender bias

because at the first hearing IPS only heard testimony in support of the female accuser and prevented Mr. Pena from presenting exculpatory evidence. [Filing No. 21 at 10-11.] Finally, Mr. Pena argues that his Complaint must survive a motion to dismiss because "the court is not deciding whether [he] is likely to win, only whether he has told a story that holds together." [Filing No. 21 at 12.]

In reply, IPS argues that Mr. Pena's response brief was the first time he raised any allegation related to "pressure" IPS allegedly received from Mr. Ramos; the Complaint does not contain any allegations about pressure on IPS. However, even if such an allegation was included in the Complaint, IPS argues that external pressure alone is insufficient to state a claim that an employment decision was motivated by gender bias. [Filing No. 26 at 6.] IPS distinguishes the cases cited by Mr. Pena, noting that those cases involved, among other things: (1) differential treatment of the credibility of fraternity brothers versus sorority sisters; (2) allegations of an Associate Dean encouraging a female student to file a false complaint of harassment; (3) evidence in an investigative report being misconstrued and "slanted" in favor of the female; and, (4) gender stereotypes of males at the university causing the disciplinary proceedings to be "invariably" adverse to males. [Filing No. 26 at 8.] IPS argues that such facts are not present in this case, and that Mr. Pena has only pointed to alleged procedural deficiencies in the disciplinary process and has not tied those to gender bias. [Filing No. 26 at 8.] IPS argues that pure speculation such as Mr. Pena's allegations in his Complaint cannot successfully state a claim under Title IX. [Filing No. 26 at 9.]

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . ." 20 U.S.C. § 1681(a).

To support a Title IX claim, a plaintiff must show (1) that the educational institution intentionally discriminated against the plaintiff based on the plaintiff's sex, and (2) that "gender was a motivating factor in the decision to impose the discipline." *Doe v. Indiana Univ. – Bloomington*, 2019 WL 341760, at *8 (S.D. Ind. Jan. 28, 2019) (quoting *King v. Depauw Univ.*, 2014 WL 4197507, at *10 (S.D. Ind. Aug. 22, 2014)). The formative question the Court must answer is: "do the alleged facts, if true, raise a plausible inference that [the defendant] discriminated against [the plaintiff] 'on the basis of sex?'" *Doe v. Purdue Univ.*, 2019 WL 2707502, at *11 (7th Cir. June 28, 2019). Such factual allegations that would raise a plausible inference of gender discrimination "might include, *inter alia*, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d. Cir. 1994) ("The allegations in support of the Title IX claim do more than merely recite the pleader's conclusion that the complained-of conduct was discriminatory. Instead, the complaint alleges events that, if proven, would support an inference of discrimination.").

The parties appear to agree that Mr. Pena alleged facts that would cast some doubt on the accuracy of IPS's determination that E.R.'s allegations were "substantiated," including: (1) IPS denying Mr. Pena the opportunity to present witness testimony from two witnesses at the first hearing; (2) the IPS investigator failing to interview exculpatory witnesses; (3) IPS denying Mr. Pena the opportunity to cross-examine any of the witnesses; (4) IPS failing to preserve relevant video evidence; and, (5) IPS relying on false information when it issued a second no trespass order. The issue that remains in dispute, however, is whether "the alleged facts, if true, raise a plausible inference that [IPS] discriminated against [Mr. Pena] 'on the basis of sex[.]'"

*Purdue Univ.*, 2019 WL 2707502, at *11 (7th Cir. June 28, 2019). The allegations in the Complaint that are relevant to this question include:

- Paragraph 55: "The Title IX investigation conducted by IPS was biased and inequitable from the outset."

- Paragraph 60: "Throughout the investigation of the allegations IPS discriminated against the Plaintiff on the basis of his gender, and his race (Latino), considering him guilty until proven innocent, depriving him of fundamental due process, including the right to cross-examine his accuser as guaranteed by the United States and Indiana Constitution."

[Filing No. 1 at 8.] Unlike the allegations in *Yusuf v. Vassar College*, Mr. Pena's allegations above "merely recite [his] conclusion that the complained-of conduct was discriminatory," as opposed to alleging "events that, if proven, would support an inference of discrimination." 35 F.3d 709 (2nd Cir. 1994). The court in *Yusuf* found that the plaintiff had alleged sufficient facts that would suggest gender bias was a motivating factor in the erroneous outcome of the disciplinary proceeding. *Id.* at 713. Those allegations included:

- "Defendant has historically and systematically rendered verdicts against males in sex harassment cases, solely on the basis of sex," and

- "Male respondents in sex harassment cases at Vassar College are discriminated against solely on the basis of sex. They are invariably found guilty, regardless of the evidence, or lack thereof."

*Id.* Here, however, there are no allegations in the Complaint that are similarly particularized that suggest IPS's decision was motivated in any way by gender bias. *See Doe v. Columbia Coll. Chi.*, 299 F. Supp. 3d 939, 954 (N.D. Ill. 2017) (dismissing plaintiff's Title IX claim because plaintiff "does not allege any statements from university officials about gender bias" at the school, nor does he "show that a key university official had recently endorsed an article biased toward female victims, and . . . [he] does not allege that [any] Hearing Panel members encouraged the victim to file a false complaint or drastically changed their position during the disciplinary process"); *see also Doe v. Cummins*, 662 F. App'x. 437, 453 (6th Cir. 2016) (affirming the dismissal of plaintiffs'

Title IX claims where plaintiffs "do not allege that [the university] or any of its officials had faced public criticism for their handling of Title IX investigations prior to [plaintiffs'] hearings. Nor do [plaintiffs] allege that [the university] . . . was being investigated by the government for potential Title IX violations."). In the most recent Seventh Circuit case dealing with this issue, the appellate court reiterated that a plaintiff "must allege facts raising the inference that [the defendant] acted at least partly on the basis of sex in his particular case." *Doe v. Purdue Univ.*, 2019 WL 2707502, at *12 (7th Cir. June 28, 2019). In *Doe v. Purdue Univ.*, the Seventh Circuit held that the plaintiff's Complaint included allegations that were sufficient to survive a motion to dismiss because

> "[i]t is plausible that [the Dean] and her advisors chose to believe [the complainant] because she is a woman and to disbelieve [the plaintiff] because he is a man. The plausibility of that inference is strengthened by a post that [the Center for Advocacy, Response, and Education ("CARE")—a center dedicated to supporting victims of sexual violence—] put up on its Facebook page during the same month that [the plaintiff] was disciplined: an article from *The Washington Post* titled 'Alcohol isn't the cause of campus sexual assault. Men are.' Construing reasonable inferences in [the plaintiff's] favor, this statement, which CARE advertised to the campus community, could be understood to blame men as a class for the problem of campus sexual assault rather than the individuals who commit sexual assault. And it is pertinent here that Bloom, CARE's director, wrote the letter regarding [the complainant] to which [the Dean] apparently gave significant weight.

*Id.* The Seventh Circuit reasoned that, "[t]aken together, [the plaintiff's] allegations raise a plausible inference that he was denied an educational benefit on the basis of his sex." *Id.* at 13. In contrast, however, are Mr. Pena's sparse allegations that the Title IX investigation was "biased and inequitable from the outset" and "[t]hroughout the investigation of the allegations IPS discriminated against [him] on the basis of his gender. . . ." [Filing No. 1 at 8.] These allegations are merely conclusory and do not provide facts that could lead to an inference that his gender was a motivating factor in IPS's decision to terminate his employment. Therefore, Mr. Pena has failed

to state a claim under Title IX.  Accordingly, IPS's motion to dismiss is **GRANTED** as to Mr. Pena's Title IX claim.

### C. Violation of the Due Process Clause of the Fourteenth Amendment

In his Complaint, Mr. Pena alleges that IPS "depriv[ed] him of fundamental due process, including the right to cross-examine his accuser as guaranteed by the United States and Indiana Constitutions." [Filing No. 1 at 8.]  IPS argues that Mr. Pena does not have a federally protected property interest upon which to rest his § 1983 claim, and therefore his claim under the Due Process Clause of the Fourteenth Amendment fails as a matter of law.  [Filing No. 16 at 15.]  In addition, IPS argues that Mr. Pena does not have a property interest in further employment with IPS because he is an at-will employee.  [Filing No. 16 at 13.]  IPS further argues that any alleged violation of IPS's Administrative Guidelines or Indiana statutes related to the disciplinary hearing process do not provide a legally cognizable claim under 42 U.S.C. § 1983 or the Fourteenth Amendment, and therefore Mr. Pena's Due Process Claim must be dismissed.  [Filing No. 16 at 14.]

In response, Mr. Pena argues that he was "entitled to a procedure that was fundamentally fair and equitable as set out by Title IX and its implementing rule, as well as the Department of Education's notice of proposed rulemaking."  [Filing No. 21 at 14.]  In support of his argument, Mr. Pena cites a New York state trial court decision—*Starishevsky v. Hofstra Univ.*, 612 N.Y.S.2d 794 (Sup. Ct., Suffolk Cnty. 1994)—in addition to the Department of Education's proposal to amend the relevant regulations to include a grievance procedure for sexual harassment complaints. [Filing No. 21 at 14.]  Relying on the *Starishevsky* case and the proposed rule changes, Mr. Pena asserts that the following procedural deficiencies constitute "a cognizable, yet unaddressed [by the Seventh Circuit], cause of action":

- Mr. Pena "was prevented from cross examining the witness (in any manner)";

- he "was prevented from presenting exculpatory evidence and witness testimony"; and,

- "other forms of exculpatory evidence [were] ignored or expressly directed to be disregarded."

[Filing No. 21 at 14.]

In reply, IPS notes that Mr. Pena failed to provide any federal legal authority in support of his argument that his due process claim can proceed. [Filing No. 26 at 10.]

The Fourteenth Amendment's Due Process Clause prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend XIV, § 1. Mr. Pena asserts a procedural due process claim, which requires him to establish: "(1) a cognizable property interest; (2) a deprivation of that property interest; and, (3) a denial of due process." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010). The protected property right or interest must be one in which "he claims to have been denied without due process." *Id.* Property interests are not created by the Fourteenth Amendment, but rather are rules or understandings that secure certain benefits and support claims of entitlement to those benefits. *Frey Corp. v. City of Peoria*, 735 F.3d 505, 509-10 (7th Cir. 2013) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). A property interest in employment that is constitutionally protected "can arise from a statute, regulation, municipal ordinance, or an express or implied contract." *Price v. Bd. of Educ. of City of Chi.*, 755 F.3d 605, 607-08 (7th Cir. 2014) (quotations and citations omitted). The protected interest, however, cannot be derived from the Due Process Clause. *Id.* Further, Indiana has a "strong" presumption that employees have at-will employment, and therefore no protected interest. *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 717 (Ind. 1997). If an employee has at-will employment, both the employee and his employer could "terminate the employment at any time for a good reason, bad reason, or no reason at all." *Montgomery v. Bd. of Trs. of Purdue*

*Univ.*, 849 N.E.2d 1120, 1128 (Ind. 2006) (citations and quotation omitted). Such employer discretion is incompatible with any entitlement to continued employment, the bedrock of "property" for Fourteenth Amendment purposes. *See, e.g.*, *Rujawitz v. Martin*, 561 F.3d 685, 688-89 (7th Cir. 2009) (finding no property interest where employee failed to introduce evidence to overcome legal presumption of at-will employment). A protectable property interest only arises once that discretion is limited with "some substantive criteria . . . [,] as can be found, for example, in a requirement that employees be fired only 'for cause.'" *Cain v. Larson,* 879 F.2d 1424, 1426 (7th Cir. 1989) (footnote omitted). Only then must a deprivation of employment comport with due process. *Gilbert v. Homar,* 520 U.S. 924, 928-29 (1997); *Mitchell v. Glover*, 996 F.2d 164, 167 (7th Cir. 1993) ("As an 'at-will employee' the plaintiff clearly had no entitlement to continued employment and thus could be dismissed at any time for any reason.").

Here, Mr. Pena does not dispute that he is an at-will employee. Instead, he argues that his due process claim is based on his federally protected interest in due process (i.e., in the procedures set forth in IPS's Administrative Guidelines and Indiana statutes), as opposed to continued employment with IPS. [*See* Filing No. 21 at 14 (stating Mr. Pena was "entitled to a procedure that was fundamentally fair and equitable as set out by Title IX and its implementing rule, as well as the Department of Education's notice of proposed rulemaking.")]. However, the fundamental flaw in Mr. Pena's argument is that he relies on the Due Process Clause to give him a protected property interest. This stands the due process analysis on its head: Mr. Pena must *first* have a federally protected property interest, and then that property interest is entitled to due process protection. He cannot have a federally protected property interest *because* the property interest is entitled to due process protection. *See* Moulton v. Vigo County, 150 F.3d 801, 805 (7th Cir. 1998) ("Moulton's entitlement to a hearing may bear on whether he received due process, but it is not relevant to

determining whether he had a property interest in continued employment."). It is undisputed that Mr. Pena was an at-will employee; as such, Mr. Pena had no property interest in continued employment with IPS. And, as the Court has noted, the Due Process Clause does not create a property interest. Because Mr. Pena had no property interest that could form the basis for a due process violation, his due process claim must be dismissed. Therefore, the Court **GRANTS** IPS's motion to dismiss the due process claim.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** IPS's Motion to Dismiss as follows:

- IPS's Motion to Dismiss related to Mr. Pena's Title VII claim is **DENIED**—Mr. Pena's Title VII discrimination claim may proceed;

- IPS's Motion to Dismiss related to Mr. Pena's Title VII hostile work environment claim is **GRANTED**—Mr. Pena's hostile work environment claim is **DISMISSED** for failure to exhaust administrative remedies;

- IPS's Motion to Dismiss related to Mr. Pena's Title IX claim is **GRANTED**—Mr. Pena's Title IX claim is **DISMISSED**; and,

- IPS's Motion to Dismiss related to Mr. Pena's Fourteenth Amendment due process claim is **GRANTED**—Mr. Pena's due process claim under the Fourteenth Amendment is **DISMISSED**.

As a final matter, the Court requests that the Magistrate Judge set a settlement conference with the parties at her earliest convenience. [16]

20

Date: 7/11/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only to all counsel of record</u>**